UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| MATTHEW BEELER, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Cause No. 2:23-cv-00165-JRS-MJD |
| | ) | [2:21-cr-00008-JRS-CMM-1] |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

**MEMORANDUM IN OPPOSITION
TO MATTHEW BEELER'S 28 U.S.C. § 2255 MOTION**

The United States, by counsel, hereby responds to Petitioner Matthew Beeler's *Pro So* Motion to Vacate, Set Aside, or Correct Sentence. Beeler claims that his counsel was ineffective because he made no attempt to suppress the evidence seized from Beeler's residence and did not "properly" contest the § 924(c)(1) charge to which Beeler pleaded guilty. (Civ. Doc. 1.) Neither argument has merit. For the reasons set forth below, any motion to suppress directed at the state residential search warrant would have been frivolous. Similarly, any challenge to the § 924(c)(1) charge would have been futile given the overwhelming evidence that Beeler possessed a firearm in furtherance of a drug trafficking offense. Thus, Beeler cannot meet his burden in showing that his counsel's performance was both deficient and prejudicial, as required under *Strickland*. This Court should therefore deny Beeler's petition.

1

## BACKGROUND

The facts of Beeler's crimes, as provided in his presentence report, are as follows:

> On November 7, 2020, officers with the Terre Haute Police Department (THPD) and medics responded to a residence on Schall Avenue in Terre Haute regarding the report of a possible drug overdose of several persons.
>
> Inside the residence, first responders found the defendant and a female subject unresponsive. Medics administered Narcan to the defendant and the woman. While attempting to revive the defendant, they found a large plastic bag underneath the defendant's body containing what appeared to be a crystalline substance consistent in appearance with methamphetamine. In addition, when officers conducted a safety sweep to identify if there were any other victims, they spotted in plain view in the defendant's bedroom three long guns, ammunition, and what appeared to be additional methamphetamine. Several minor children were present in the house and sent into custody elsewhere.
>
> Officers secured a state search warrant for the residence. In the course of executing the warrant, officers found and seized multiple firearms from the master (defendant's) bedroom, including one Tavor X-95 5.56mm rifle; one HiPoint 9mm carbine; one Sears Roebuck model 14, 20-gauge shotgun; and one Mossberg 500, 12-gauge shotgun. Officers found multiple rounds of ammunition in various calibers. On top of a dresser, officers found a plastic bag containing about 25 grams of methamphetamine. Officers also found a safe hidden behind a wall in the master bedroom. Directly next to, or in front of the safe, was a loaded Taurus G3 9mm handgun, along with a box containing 9mm ammunition. Within the safe was a handbag containing 62 baggies, each containing approximately 28 grams of methamphetamine. The safe also contained a plastic tote with 14 additional baggies that, likewise, each contained about 28 grams of apparent methamphetamine. Multiple empty baggies containing residue, packaging material, and digital scales were present in the residence, as well. The

defendant knowingly possessed the Taurus G3 9mm handgun in furtherance of drug trafficking.  Further, he has multiple felony convictions which prohibit him from possessing a firearm.

In all, officers found and seized about 2,658 grams (2.66 kilograms) of a mixture or substance containing methamphetamine in the house.  The defendant knew that the mixture or substance was a controlled substance, and he intended to distribute it.

(Cr. Doc. 25 ¶¶ 6–9.[1])

In March 2021, a grand jury returned a three-count indictment charging Beeler with possession with intent to distribute 500 grams or more of a mixture or substance containing methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(viii) (Count 1); possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1) (Count 2); and felon in possession of a firearm, in violation of 18 U.S.C. 922(g)(1) (Count 3).

In March 2022, Beeler petitioned to plead guilty pursuant to a plea agreement.  Per the agreement, Beeler agreed to plead guilty to Counts 1 and 2 and in exchange the United States agreed to dismiss Count 3.  (Cr. Doc. 21.) A combined change of plea and sentencing hearing was held on July 21, 2022. (Cr. Doc. 33.)  The Court accepted Beeler's plea of guilty to Counts 1 and 2 and sentenced him to 183 months' incarceration.  (Cr. Doc. 34.)  On March 31, 2023, Beeler filed the present motion to vacate.  (Civ. Doc. 1.)

_____

[1] "Cr. Doc." references the docket entry in Beeler's criminal case, *United States v. Matthew Beeler*, 2:21-cr-00008-JRS-CMM-1 (S.D. Ind. 2021).

## STANDARD OF REVIEW

"[R]elief under § 2255 is an extraordinary remedy because it asks the district court essentially to reopen the criminal process to a person who already has had an opportunity for full process." *Almonacid v. United States*, 476 F.3d 518, 521 (7th Cir. 2007).   To therefore succeed on his motion, Beeler must establish "'an error of law that is jurisdictional, constitutional, or constitutes a fundamental defect which inherently results in a complete miscarriage of justice.'" *Harris v. United States*, 366 F.3d 593, 594 (7th Cir. 2004) (quoting *Borre v. United States*, 940 F.2d 215, 217 (7th Cir. 1991)).

To prove ineffective assistance of counsel, Beeler faces additional hurdles.   Specifically, he must show that defense counsel's performance fell below an objective standard of reasonableness *and* that he suffered prejudice as a result.  *See Strickland v. Washington*, 466 U.S. 668 (1984).

In evaluating whether counsel's performance was deficient, the court must defer to counsel's tactical decisions, avoid "the distorting effects of hindsight," and give counsel the benefit of a strong presumption of reasonableness.  *Id.* at 689; *see also United States v. Flores*, 739 F.3d 337, 340 (7th Cir. 2014) ("[C]ounsel's strategic choices are presumed to be competent."). To satisfy the second prong, Beeler must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Strickland*, 466 U.S. at 694.  It is not enough for Beeler

4

to show that "the errors had some conceivable effect on the outcome of the proceeding." *Id*. at 693. A court "need not consider the first prong of the *Strickland* test if [it] find[s] that counsel's alleged deficiency did not prejudice the defendant." *Berkey v. United States*, 318 F.3d 768, 772 (7th Cir. 2003) (citing *Matheney v. Anderson*, 253 F.3d 1025, 1042 (7th Cir. 2001)).

Ultimately, Beeler's claim must be viewed in the context of his guilty plea. Indeed, the Court must take particular care to avoid the "distortions and imbalance that can inhere in a hindsight perspective[.]" *Premo v. Moore*, 562 U.S. 115, 125 (2011). Because Beeler's petition follows his guilty plea, he must show prejudice by demonstrating a "reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). In the end, courts "should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies." *United States v. Zacahua*, 940 F.3d 342, 345 (7th Cir. 2019) (quoting *Lee v. United States*, 582 U.S. 357, 369 (2017)).

## DISCUSSION

### A.   Defense Counsel Did Not Render Ineffective Assistance in Not Moving to Suppress the Seized Evidence.

Beeler first argues that his counsel rendered ineffective assistance by not moving to suppress the evidence seized pursuant to the state's residential

search warrant.  Generally, when defense counsel is faulted for failing to file a motion to suppress, the failure may constitute deficient performance only where "no competent attorney would think a motion to suppress would have failed." *Premo*, 562 U.S. at 124.  This means Beeler must "demonstrate that there was both a reasonable probability that he would have prevailed on the motion to suppress and a reasonable probability that, if [the evidence] were suppressed, he would have been acquitted." *Hicks v. Hepp*, 871 F.3d 513, 526 (7th Cir. 2017) (quotations omitted).  Counsel's decision not to pursue an argument that was "destined to prove unsuccessful" does not constitute ineffective assistance of counsel.  *United States v. Lawson*, 947 F.2d 849, 853 (7th Cir. 1991); *see also United States v. Cieslowski*, 410 F.3d 353, 360 (7th Cir. 2005) ("When the claim of ineffective assistance is based on counsel's failure to file a motion to suppress, we have required that a defendant prove the motion was meritorious.").  In examining counsel's conduct, courts are "highly deferential" to counsel and presume that the decisions constitute reasonable litigation strategy.  *United States v. Best*, 426 F.3d 937, 945 (7th Cir. 2005).

Although unclear, Beeler appears to argue that because he allegedly did not own the firearms at issue, the state lacked probable cause for the residential search.  (Civ. Doc. 1 at 5.)  Beeler's vague claim, even if true, fails to rebut the fact that the warrant was supported by probable cause and any challenge to the contrary would have been frivolous.

6

In reviewing whether a search warrant established probable cause, the reviewing court's inquiry would be limited to whether the issuing judicial officer had a "substantial basis" for finding probable cause. *Illinois v. Gates*, 462 U.S. 213, 238–39 (1983). Great deference must be given to the finding of probable cause made by the court that initially reviewed the application for a search warrant. *Id.* at 236. "Probable cause is established when, based on the totality of the circumstances, the affidavit sets forth sufficient evidence to induce a reasonably prudent person to believe that a search will uncover evidence of a crime." *United States v. Peck*, 317 F.3d 754, 756 (7th Cir. 2003). "Probable cause denotes more than a mere suspicion, but it does not require certainty." *United States v. Anton*, 633 F.2d 1252, 1254 (7th Cir. 1980).

In this case, the affidavit submitted in support of the warrant application established probable cause that the search would yield evidence of criminal activity including, but not limited to, methamphetamine and firearms. (*See* Ex. 1.) To begin with, the affidavit notes that medics had "discovered . . . a clear plastic bag containing an amount of crystal like substance . . . concealed under Beeler's body." (*Id.* ¶ 3.) The affidavit also notes that while sweeping the upstairs bedroom for additional overdose victims, officers saw "three long guns, amounts of ammunition, and a glass jar on the dresser that contained what [officers] believed to be an additional amount of methamphetamine." (*Id.*

¶ 6.)  And prior to applying for the warrant, officers confirmed that Beeler was a convicted felon and unable to possess firearms.  (*Id*. ¶ 7.)

Taken together, officers had probable cause to believe *at the least* a search would yield additional evidence of illicit methamphetamine possession, which remains a crime under Indiana law.   *See* Ind. Code 35-48-4-6.1. Moreover, given the proximity of the three long guns to the additional methamphetamine located in the upstairs bedroom, and Beeler's previous conviction for drug dealing, there existed probable cause of drug trafficking. *See generally Brock v. United States*, 573 F.3d 497, 502 (7th Cir. 2009) (defendant's prior conviction for a drug-related crime helped establish probable cause for drug-related search); *United States v. Blanchard*, 542 F.3d 1133, 1141 (7th Cir. 2008) ("[T]he firearm is an indication of drug activity, and participation in drug trafficking supplies a motive for having the gun." (quoting *United States v. Stokes*, 211 F.3d 1039, 1042 (7th Cir. 2000))).

Even so, officers had probable cause to believe that a search would yield additional evidence of Beeler's unlawful possession of firearms, based both on the firearms officers saw in plain view and Beeler's status as a convicted felon. Contrary to Beeler's suggestion, the key factor is actual or constructive possession of the firearm, not legal ownership.  *See United States v. Windom*, 19 F.3d 1190, 1199 (7th Cir. 1994); *see also United States v. Baker*, 453 F.3d 419, 422 (7th Cir. 2006) ("[T]he ownership of the gun is not dispositive.").  Thus,

8

even if the warrant otherwise lacked probable cause to search the residence for drugs, the warrant was supported by ample probable cause to believe that Beeler's possession of firearms was unlawful. (*See* Ex. 1 ¶ 7.) The execution of the warrant therefore did not violate Beeler's constitutional rights.[2]

In any event, counsel's performance can be deemed ineffective only if, but for the alleged error, the outcome of the proceeding would have been different. Thus, the Court here would have to find that, had a motion to suppress been filed, it would have been granted *and* would have affected the parties' positions such that Beeler would not have pleaded guilty. As an initial matter, "suppression of evidence seized pursuant to a search warrant that is later declared invalid is inappropriate if the officers who executed the warrant relied in good faith on the issuing judge's finding of probable cause." *United States v. Searcy*, 664 F.3d 1119, 1124 (7th Cir. 2011) (citing *United States v. Leon*, 468 U.S. 897, 920 (1984)). That is, even if defense counsel successfully challenged the affidavit, he would then face the insurmountable burden of having also to show that the officers lacked good faith in executing the warrant.

---

[2] Under that scenario—where officers had probable cause to search the residence for firearms only—defense counsel would nonetheless have had no ground to suppress the drug evidence, as officers discovered that evidence while in a lawful position. For example, defense counsel could not credibly move to suppress the methamphetamine found inside Beeler's safe. Because a pistol may fit inside the confines of a safe, officers were lawfully permitted to open the safe to conduct their search for additional firearms. *See United States v. Bruce*, 109 F.3d 323, 328 (7th Cir. 1997) (analyzing plain view doctrine).

*See United States v. Otero,* 495 F.3d 393, 398 (7th Cir. 2007) ("An officer's decision to obtain a warrant is *prima facie* evidence that he or she was acting in good faith."). Here, there is little doubt that the good faith exception would apply. *See id.* Defense counsel cannot be faulted for deciding, correctly, to not file a motion to suppress under the circumstances.

Besides, the United States did not need the evidence obtained from the search warrant to establish Beeler's guilt to both the drug trafficking offense and a § 924(c)(1) charge. That is, even if counsel had filed a motion to suppress and succeeded in suppressing the evidence seized pursuant to the search warrant, the methamphetamine and three long guns discovered by officers *prior to* the warrant would have been admissible based on the plain view doctrine.[3] *See generally Bruce*, 109 F.3d at 328.

Nevertheless, Beeler cites *United States v. Grant*, No. 21-3686, 2023 WL 119399 (6th Cir. 2023)—an unpublished decision from the Sixth Circuit—to argue that a motion to suppress would have been successful. Yet, the instant facts are not analogous to those in *Grant*. There, the defendant challenged a

---

[3] Granted, Count Two concerned the Taurus handgun. Nevertheless, in the event defense counsel successfully suppressed the handgun, the United States would have sought a superseding indictment charging Beeler with a § 924(c) charge related to the three long guns. Considering the methamphetamine found under Beeler's body and discovered in plain view, coupled with the proximity of the long guns to those drugs, there is little question that the United States would have been successful in obtaining a true bill on that count. Beeler's claim of prejudice is therefore unavailing.

series of warrants issued to search his residence for drug-trafficking records. In arguing that the warrants lacked a nexus between the alleged drug dealing and property, the defendant noted that "all the police knew about the property when they obtained the warrant was that [the defendant], a suspected drug dealer, was the renter and that he had parked his car there on numerous occasions staying for long." *Id.* at *1. The police had never "seen any drugs or drug paraphernalia on or around the property." *Id.* Nor was there any evidence of illegal firearm possession. *See generally id.*

The situation here is far different. Officers did not base their search warrant solely on Beeler's status as an alleged drug dealer. The additional supporting evidence suggesting illegal drug activity was overwhelming. Under Beeler's unconscious body, medics found a large bag containing what appeared to be methamphetamine. (Cr. Doc. 13 ¶¶ 6–9.) And while conducting a safety sweep, officers saw in plain view inside the residence's primary bedroom— which officers had cause to believe Beeler occupied—three long guns, ammunition, and additional methamphetamine. (*Id.*) Thus, the evidence at the time suggested *at the least* the residence would contain evidence of illegal drug possession—and, given Beeler's previous felony conviction for drug dealing, officers also had probable cause to believe the search would yield evidence of drug distribution or unlawful possession of firearms. *See generally supra.* The Sixth Circuit's decision in *Grant* is entirely inapplicable here.

11

Nor does *Ferguson v. City of Charleston*, 532 U.S. 67 (2001), support Beeler's argument. At issue there were a series of warrantless urine tests conducted by state hospital staff members. The Court held that the urine tests were "searches" within the meaning of Fourth Amendment and were unreasonable without a warrant. *Id.*

Beeler appears to cite *Ferguson* for the proposition that the officers here conducted an illegal search of his residence "prior to obtaining" the residential warrant at issue. (Civ. Doc. 1 at 9–10.) Yet, Beeler fails to identify a single illegal search conducted by the officers. The officers' initial entry into the residence was supported by public safety concerns—i.e., a report of overdose victims—as was the medics' turning of Beeler over while attempted to resuscitate him. *See Mincey v. Arizona*, 437 U.S. 385, 392 (1978) ("[T]he Fourth Amendment does not bar police officers from making warrantless entries and searches when they reasonably believe that a person within is in need of immediate aid."). Nor did officers conduct an illegal search when they effectuated a limited sweep of the residence to ensure there were no additional victims. *See generally id.* ("The need to protect or preserve life or avoid serious injury is justification for what would be otherwise illegal absent an exigency or emergency." (quoting *Wayne v. United States*, 318 F.2d 205, 212 (D.C. Cir. 1963))). As noted above, any illicit items seen by officers during that sweep would be admissible under the plain view doctrine. *See Bruce*, 109 F.3d at 328.

12

In the end, Beeler puts forth no evidence that a motion to suppress would have been successful.   Indeed, defense counsel investigated the issues, reviewed them fully with Beeler, and clearly did not see any credible argument to make.  Thus, Beeler's claim should be denied.

## B.  Defense Counsel Had No Credible Basis to Challenge the Section 924(c) Charge.

Beeler next argues that he received ineffective assistance because his counsel did not "properly" contest the Section 924(c) charge.  Among other things, Section 924(c) prohibits a person from possessing a firearm "in furtherance of" a drug trafficking crime.   The Seventh Circuit has acknowledged a non-exhaustive list of factors developed by the Fifth Circuit for use in the determining whether a firearm was possessed "in furtherance of" another crime. The list includes "the type of drug activity that is being conducted, accessibility of the firearm, the type of the weapon, whether the weapon is stolen, the status of the possession (legitimate or illegal), whether the gun is loaded, proximity to drugs or drug profits, and the time and circumstances under which the gun is found." *United States v. Castillo*, 406 F.3d 806, 815 (7th Cir. 2005) (internal citations omitted); *see also United States v. Seymour*, 519 F.3d 700, 715 (7th Cir. 2008) (applying factors).

As before, Beeler claims that because he did not allegedly own the firearm at issue, a § 924(c) conviction cannot stand.   Contrary to Beeler's

suggestion, however, ownership of the firearm is irrelevant.  *See Windom*, 19 F.3d at 1199; *see also United States v. Range*, 94 F.3d 614, 621 (11th Cir. 1996) ("Ownership of the gun . . . is irrelevant to the determination whether there has been a violation of section 924(c)(1)."); *United States v. Dirden*, 38 F.3d 1131, 1142 (10th Cir. 1994) ("[The defendant's] argument that no evidence was introduced showing his ownership of the drugs or the firearm misses the point."); *United States v. Smith*, 962 F.2d 923, 931 (9th Cir. 1992) ("Neither the ownership of the firearm nor the primary non-criminal use to which the firearm is typically put is relevant."); *United States v. Robinson*, 857 F.2d 1006, 1010 (5th Cir. 1988) ("Again, ownership is not essential to possession."). Defense counsel cannot be faulted for failing to raise a frivolous argument.[4]

In any event, there exists overwhelming evidence that Beeler possessed a firearm in furtherance of a drug trafficking offense.  Officers discovered the firearm at issue "[d]irectly next to, or in front of [a] safe," in which were located 62 baggies, each containing 28 grams of methamphetamine, and a plastic tote containing an additional 14 individually packed baggies of methamphetamine. (Cr. Doc. 13 ¶¶ 6–9.)  Put simply, it was not the mere proximity of the firearm

---

[4] Regardless, only one of the exhibits submitted by Beeler concerns the firearm that forms the basis of his § 924(c) conviction.  The exhibit—an undated, self-serving note signed by one "Brandon Neff"—fails to conclusively establish that Beeler did not own the firearm.  Defense counsel's wise decision to not submit that suspect piece of evidence to the court should not be questioned here.

to drugs that supported the § 924(c) charge.  Rather, it was "the type of drug activity that [was] being conducted"—here, distribution of methamphetamine; the "accessibility of the firearm"—the firearm was located in Beeler's room; "the status of the possession"—Beeler was a convicted felon unable to possess firearms; the fact that the "gun [was] loaded;" and the "circumstances under which the gun [was] found"—here, by officers responding to a 911 call concerning overdose victims.  *See generally Castillo*, 406 F.3d at 815.  Thus, far from "being uninformed" about the applicable standard, Civ. Doc. 1 at 11, defense counsel appropriately counseled his client to plead guilty to the § 924(c) charge considering the overwhelming evidence.[5]

## C.   Beeler's Tangential Assertions Should Likewise Be Rejected.

Although Beeler primarily raises two claims of ineffective assistance of counsel, his petition contains additional tangential assertions.  First, Beeler asserts that his counsel rendered ineffective assistance in failing to challenge Beeler's transfer to federal custody.  (Civ. Doc. 1 at 5.)  He also appears to assert a substantive due process claim regarding his Section 924(c) conviction. (*Id*. at 4.)  As an initial matter, Beeler's tangential assertions are undeveloped, and he provides no evidence or argument in support of them.  As such, the

---

[5] Beeler's reliance on *United States v. West*, 643 F.3d 102 (3d Cir. 2011), is entirely unavailing.  The *West* decision concerned Section 2K2.1(b)(6) of the Sentencing Guidelines, i.e., whether the defendant possessed a firearm in connection with another felony offense.  Section 924(c) was not at issue.

claims are waived, and the Court should deny the claims. *See United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991) ("[P]erfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived (even where those arguments raise constitutional issues)."); *Small v. Endicott*, 998 F.2d 411, 417–18 (7th Cir. 1993) ("While the courts liberally construe *pro se* pleadings as a matter of course, judges are not . . . required to construct a party's legal arguments for him.").

In any event, both assertions fail on the merits. The record discloses that the grand jury indicted Beeler on March 16, 2021. (Cr. Doc. 1.) An agent served Beeler with the federal arrest warrant in the Vigo County Jail on March 23, 2021. (Cr. Doc. 11.) The state prosecutor filed a motion to dismiss the state case against Beeler, and that order was granted, on March 25, 2021. (Ex. 2, mycase.IN.gov printout.) Agents brought Beeler to federal court for his initial appearance on March 26, 2021, where he was ordered detained in the custody of the United States Marshal. (Cr. Doc. 15.) There simply exists no factual basis by which to challenge Beeler's transfer to federal custody.

Nor has Beeler identified any cognizable legal theory that his counsel could have raised. Ultimately, a writ of habeas corpus ad prosequendum was not required in this case, as the state dismissed its charges against Beeler. "Normally, the sovereign which first arrests an individual acquires priority of jurisdiction for purposes of trial, sentencing, and incarceration." *United States*

*v. Warren*, 610 F.2d 680, 684–85 (9th Cir. 1980).[6]  However, the sovereign with priority of jurisdiction—here, the state of Indiana—may relinquish primary jurisdiction to another sovereign.  *Id*. at 685.  Primary jurisdiction may be relinquished when one sovereign permits another to incarcerate its prisoner without challenge.  *Thomas v. Whalen*, 962 F.2d 358, 362 n. 7 (4th Cir. 1992).  Primary jurisdiction can also be relinquished by operation of law such as through bail release, expiration of the sentence, parole, or dismissal of the charges.  *United States v. Cole*, 416 F. 3d 894, 897 (8th Cir. 2005); *see generally Shumate v. United States*, 893 F. Supp. 137, 142 (N.D.N.Y. 1995) (rejecting argument that New York State was unable to expressly relinquish its priority of jurisdiction to the United States by waiver).

In other words, the state of Indiana waived primary jurisdiction when it effectuated Beeler's transfer to federal custody without a writ (or, at the least, when it dismissed its charges against Beeler).  Beeler had no legal grounds to challenge that voluntary waiver by the state and therefore his counsel was not ineffective in not raising any such "jurisdictional issue."

Similarly, Beeler's assertion that he was denied due process because his counsel did not "properly" contest the § 924(c) charge is entirely unavailing.

---

[6] Despite the undersigned's best efforts, there appears to be a dearth of Seventh Circuit authority on the issue.  Therefore, the United States presents persuasive authority for the Court's consideration.

As noted above, the evidence was overwhelming that Beeler possessed a firearm in furtherance of a drug trafficking charge.   Beeler's assertion is predicated on a belief that, as noted above, is legally incorrect.   Ownership of a firearm is irrelevant to a § 924(c) charge and thus Beeler's substantive challenge to his conviction and sentence fails on the merits.

### D. Beeler is Not Entitled to an Evidentiary Hearing or an Order Appointing Counsel.

As for Beeler's final requests—that the Court appoint him counsel and hold an evidentiary hearing—both should be denied.   First, Beeler has no constitutional right to appointed counsel in a § 2255 proceeding.   *See Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987).   Although a district court may appoint counsel for an indigent prisoner when the interest of justice so requires, *see* 18 U.S.C. § 3006A(a)(2)(B), here it does not, as Beeler's claims are meritless.   *See, e.g.*, *United States v. Lloyd*, 983 F. Supp. 738, 748 (N.D. Ill. 1997) ("We do not believe that any of his claims are even arguably meritorious, so the appointment of counsel would not serve any purpose.").

Beeler's request for an evidentiary hearing is also meritless.   In a § 2255 proceeding, the district court is not required to grant an evidentiary hearing where the motion and record "conclusively show that the prisoner is entitled to no relief," or if the defendant's allegations "are vague, conclusory, or palpably incredible, rather than detailed and specific."   *Long v. United States*, 847 F.3d

916, 920 (7th Cir. 2017) (citation omitted).  Here, because it is clear from the

pleadings, files, and records that Beeler is not entitled to relief, an evidentiary

hearing is not necessary.

## CONCLUSION

For all the foregoing reasons, the United States respectfully urges the

Court to deny Beeler's § 2255 motion.


Respectfully submitted,

ZACHARY A. MYERS
United States Attorney

By:    /s/ Corbin Houston
William L. McCoskey
Corbin Houston
Assistant United States Attorneys
10 W. Market Street, Suite 2100
Indianapolis, IN 46204
Telephone: (317) 226-6333
Fax: (317) 226-6125
Email: Corbin.Houston@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on May 11, 2023, a copy of the foregoing Memorandum in Opposition to Beeler's § 2255 Motion was filed electronically, and a copy of the foregoing was mailed, by first-class U.S. Mail, postage prepaid and properly addressed to the following:

> Matthew Ryan Beeler
> No. 36375-509
> FCI – Gilmer
> Inmate Mail/Parcels
> P.O Box 6000
> Glenville, WV 26351

s/ Corbin Houston
Corbin Houston
Assistant United States Attorney
